UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-394-GWU

BILL VAUGHN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

     in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

  4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

  5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984); <u>Walters v. Commissioner of Social Security</u>, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

  One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u>  <u>Accord,</u> <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.

4

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Bill Vaughn, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of disorders of the spine (discogenic and degenerative). (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Vaughn retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 18-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 47, "limited" education, and semi-skilled work experience as a sawmill worker, could perform any jobs if he were limited to "light" level exertion, with the option of sitting or standing, could occasionally climb, bend, stoop, and crouch, and was limited to performing simple instructions in an object-focused work environment with occasional changes in the work setting or work routine, and occasional interaction with coworkers, supervisors, or the public. (Tr. 50-1). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, the court finds that the administrative decision was supported by substantial evidence.

The plaintiff had originally filed applications for DIB and SSI in 2003, but these were denied in a decision by an ALJ dated November 14, 2005 (Tr. 68-75). The ALJ declined to reopen the prior applications, meaning the decision was final through that date. Absent a showing of changed circumstances, the residual functional capacity in the 2005 decision is binding for subsequent, unadjudicated periods under the rule announced in <u>Drummond v. Commissioner of Social Security</u>, 126 F.3d 837, 843 (6th Cir. 1997). Mr. Vaughn filed another application for DIB on March 8, 2006 (Tr. 104-6), and an SSI application on September 13, 2007 (Tr. 14), alleging disability due to back pain from deteriorating and bulging discs, arthritis, and nervousness due to pain (Tr. 121). He testified that he had quit his job as a machine operator at a lumber yard because of worsening back pain, which radiated to his left leg. (Tr. 30-2). He stated that after he had stopped working in October or November, 2003, he had an MRI, but declined to have spinal injections due to advice from acquaintances. (Tr. 41-2). After losing his medical card, he was seeing a Dr. Winchester at a free clinic. (Tr. 34-5). He stated that he became frustrated and depressed and had difficulty concentrating because he could not do things that he used to. (Tr. 43). His current physician would not prescribe "nerve pills" although he had received them from a previous provider. (Tr. 36, 42). He was able to perform some activities such as scooping chicken feed. (Tr. 47).

The medical evidence confirms that Mr. Vaughn was evaluated for low back pain prior to his current applications, with office notes from Dr. Howard Lynd, a

specialist in pain management, indicating that a September 29, 2003 MRI of the lumbar spine showed discogenic degenerative changes at L4-L5 and L5-S1.  (Tr. 244).  Dr. Lynd's examination in November, 2003, showed a reasonably good range of motion, with normal sensation and reflexes but some pain with movement.  (Id.).  He recommended lumbar epidural steroid injections, but when the plaintiff declined, and requested stronger pain medications instead, Dr. Lynd informed the plaintiff that it was "not reasonable to keep increasing his opiate medication."  (Tr. 242).  There were no further visits to this source.  His family physicians at the time refused to provide any pain medications stronger than Ultracet.  (Tr. 176-7).

       The medical evidence from the plaintiff's current family physician, Dr. M. A. Winchester, provides no objective findings.  The office notes assert that Mr. Vaughn had disc disease and no surgery had been recommended, and the physician later requested records from the neurosurgeon who had referred the plaintiff to Dr. Lynd, but there is no indication that these were received.  (Tr. 239).  He was given prescriptions for Ultracet and Robaxin, a muscle relaxer, and the most recent note on October 4, 2006 simply states that he was "doing ok."  (Id.).  Dr. Winchester completed a functional capacity form almost a year later, on August 29, 2007, limiting Mr. Vaughn to sitting, standing, and walking less than a total of eight hours per day, lifting no more than 10 pounds, and having additional restrictions on bending, squatting, pushing, pulling, the use of feet for repetitive movements, and exposure to environmental pollutants and hazards.  (Tr. 245).

The ALJ reasonably rejected Dr. Winchester's restrictions due to lack of support from clinical findings. He also noted that the plaintiff testified that Dr. Winchester had asked him how much he could lift before completing the form. (Tr. 20, 34-5). The plaintiff asserts that rejection of the treating source opinion was incorrect, but Dr. Winchester's notes clearly do not support the extent of restrictions found in the functional capacity form.

The only other recent evidence regarding the plaintiff's functional abilities came in a consultative physical evaluation by Dr. Raymond Santucci on May 21, 2006. Unlike Dr. Winchester, Dr. Santucci did review some records from a neurosurgeon who had evaluated the plaintiff in 2003 and who had reviewed the MRI report. (Tr. 184). The neurosurgeon had concluded that although there was disc dessication and bulging, there was no nerve root compression or disc extrusion, and recommended conservative treatment with epidural injections and physical therapy. (Id.). Dr. Santucci's physical evaluation showed that the plaintiff had a normal gait, was comfortable both sitting and standing, and had a completely normal neurological examination including reflexes. (Tr. 185). There were no range of motion abnormalities, no spasm and no tenderness. (Tr. 185-6). Dr. Santucci concluded that the plaintiff could perform a "marked" amount of activities such as sitting, standing, walking, bending, kneeling, pushing, pulling, and lifting and carrying heavy objects. (Tr. 187).

Under the circumstances, the ALJ gave the plaintiff the benefit of the doubt in limiting him to the same physical restrictions as found by the ALJ in the 2005 decision.

From a mental standpoint, the plaintiff admitted that he was receiving no specific treatment or medication for his nerves. (Tr. 36). Dr. Gary Maryman, a psychologist, conducted a consultative mental status examination on May 17, 2006, at which time the plaintiff reported bad nerves due to pain. (Tr. 179). At the time of the examination, however, he appeared to be in a "fairly good mood," and related well. (Tr. 180). Dr. Maryman noted a poor fund of information, limited arithmetic ability, and some problems with concentration, and estimated that Mr. Vaughn's intellectual capacity might fall below average. (Tr. 180-1). However, he had a valid driver's license, came to the examination himself, took care of chickens, and did some other household tasks. (Tr. 179-81). Dr. Maryman diagnosed a depressive disorder and estimated borderline intellectual functioning. (Tr. 182). He concluded that the plaintiff "likely" was able to understand, remember, and carry out simple, one- or two-step instructions and tasks, sustain focus and concentration in carrying out simple, one- or two-step work assignments in a routine work schedule, and interact appropriately with fellow workers and supervisors. (Tr. 182-3). He felt that Mr. Vaughn might be somewhat limited in dealing with the general public and would be limited in his ability to adjust and adapt to the stress and pressures of only a medium to low stress work environment. (Tr. 182-3). The hypothetical mental

restrictions are compatible with this conclusion, and there is no evidence of any greater mental restriction.  Accordingly, this portion of the decision is also supported by substantial evidence.

The plaintiff makes additional arguments that the ALJ did not properly consider the combined effect of his impairments, but a review of the hearing decision shows that the ALJ's discussion was adequate in this regard.  (Tr. 18).  See Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).

Finally, the plaintiff objects to the ALJ's finding that his testimony was not entirely credible, asserting that it was corroborated by the medical evidence.  Given the lack of objective medical findings, the ALJ's credibility determination was reasonable.

The decision will be affirmed.

This the 20th day of August, 2010.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**